1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                    SOUTHERN DISTRICT OF CALIFORNIA

10   CARLOS ESCAMILLA,                    Civil No.    07-cv-0353-W (POR)

11                            Plaintiff,  **REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTION TO**
12          v.                            **DISMISS BE GRANTED IN PART AND DENIED IN PART**
13   GEORGE GIURBINO, et al.,
                                          **[Doc. No. 15]**
14                           Defendants.

15

16                          **I. INTRODUCTION**

17          On February 22, 2007, Plaintiff Carlos Escamilla, a state prisoner proceeding *pro se*, filed a

18   civil rights complaint pursuant to 42 U.S.C. § 1983 against the warden of Calipatria State Prison

19   ("Calipatria"), George Guirbino, and three correctional officers at Calipatria, A. Silva, R. Johnson,

20   and M.P. Duran.  (Doc. No. 1.[1])  Plaintiff sues Defendants[2] in their official and individual capacities.

21   (Compl. at 2, 3.)  On February 22, 2008, Defendants filed a Motion to Dismiss Plaintiff's Complaint.

22   (Doc. No. 15.[3])  After thorough review of the parties' papers and all supporting documents, this

23   Court RECOMMENDS that Defendant's Motion to Dismiss be GRANTED in part and DENIED in

24

25          [1]  Hereafter referred to as "Complaint."

26          [2]  Defendants assert that at the time of filing their Motion to Dismiss,  Defendants Giurbino and
27   Silva had not been served with Plaintiff's Complaint.  (MTD, Part 2 at 10, n.1.)  The Court's review of
     the docket confirms that Defendants Giurbino and Silva have not been served.  Accordingly, the term
28   "Defendants" throughout this Report & Recommendation refers solely to Defendants Johnson and
     Duran.

          [3]  Hereafter referred to as "MTD."

1  part.

2  **II. BACKGROUND**

3         Plaintiff is a state inmate currently serving a life sentence at Calipatria.  (Compl. at 9.)

4  Following the attack of a prison guard at Calipatria on November 21, 2003, Plaintiff was charged

5  with attempted murder of a peace officer under California Code of Regulations, title 15, § 3005(c).

6  (MTD, Part 4 at 1-6; MTD, Part 4 at 23-26; MTD, Part 5 at 1.)  On February 11, 2004, Plaintiff was

7  found not guilty of the charged crime, but guilty of the lesser included offense of participation in a

8  riot.  (Defs.' P&A at 58.)  Plaintiff was placed in administrative segregation for four months as a

9  result of this finding.  (MTD, Part 5 at 13.)  On May 7, 2004, Plaintiff filed a second level appeal,

10  which the Chief Deputy Warden denied on June 22, 2004.  (MTD, Part 5 at 16-18; MTD, Part 6 at 1-

11  6.)  Plaintiff then filed a director's level appeal, which was denied on January 27, 2005.  (MTD, Part

12  6 at 8.)

13         On March 4, 2005, Plaintiff filed a petition for writ of habeas corpus to the Superior Court of

14  Imperial County. (MTD, Part 8 at 6-11.[4])  In this petition, Plaintiff alleged that prison officials had

15  engaged in "arbitrary and capricious actions" when they disciplined him without a showing of

16  wrongdoing.  (MTD, Part 8 at 10.)  On March 22, 2005, the Superior Court of Imperial County

17  denied Plaintiff's petition, finding that there was sufficient evidence to support the disciplinary

18  action.  (MTD, Part 8 at 13-14.)  The court also held that Plaintiff had not presented any

19  corroborating evidence to support his alleged request for discovery of a videotape and photographs

20  that would prove his absence from the scene of the prison-yard riot. ( Id.)

21         On April 28, 2005, Plaintiff appealed this denial to the California Court of Appeal, Fourth

22  Appellate District, Division One.  (MTD, Part 8 at 16-19.)  Plaintiff again alleged that prison

23  officials had punished him without cause.  (Id.)  Plaintiff also claimed that he had submitted

24  evidence showing his request for discovery of the videotape and photographs, and that the trial court

25  ────────────────

26         [4]  Defendants have attached Plaintiff's previous state and federal habeas petitions, and the respective court's adjudication, to their Motion to Dismiss. (MTD, Part 11 at  10-21.)  Defendants request that this Court take judicial notice of these documents.  (Doc. No. 15-8 at 1.)  Pursuant to

27  Fed.R.Evid 201(b), a court may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  State court decisions are sources

28  whose accuracy cannot reasonably be questioned.  Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n. 9 (9th Cir.1987).  Accordingly, this Court takes judicial notice of Plaintiff's previous state and federal habeas petitions.

07cv0353-W (POR)

1  erred in denying his petition on this ground.  (MTD, Part 8 at 18.)  On July 15, 2005, the California

2  Court of Appeal denied Plaintiff's appeal.  (MTD, Part 8 at 21-23.)  The court treated the appeal as

3  an original petition raising the same issues, and found that Plaintiff had not raised the issue

4  regarding the videotape and photographs in his administrative appeals and therefore could not raise

5  this issue for the first time in a habeas petition.  (MTD, Part 8 at 23.)  The court further found that

6  the prison officials had not violated Plaintiff's due process rights because "some evidence" existed

7  to support the disciplinary actions.  (Id.)

8         On August 23, 2005, Plaintiff filed a petition for writ of habeas corpus in the California

9  Supreme Court.  (MTD, Part 8 at 25; MTD, Part 9 at 1-14.)  In this petition, Plaintiff alleged that the

10  prison officials violated his due process rights by forging his signature on a form waiving his right to

11  call witnesses at his disciplinary hearing, and by denying him access to a videotape and photographs

12  that would refute his involvement in the November 21, 2003 attack on the prison guard.  (MTD, Part

13  9 at 9-11.)  Plaintiff claimed that the prison had no evidence to support its disciplinary actions.

14  (MTD, Part 9 at 11-14.)  On September 21, 2005, the California Supreme Court denied this petition

15  without comment.  (MTD, Part 9 at 16.)

16         On October 11, 2005, Plaintiff filed a petition for writ of habeas corpus in the United States

17  District Court, Southern District of California.  (MTD, Part 9 at 18.)  In his petition, Plaintiff alleged

18  that prison officials had violated his right to due process by forging his signature on a form waiving

19  his right to call witnesses at his disciplinary hearing and by denying him access to a videotape and

20  photographs that would refute his involvement in the November 21, 2003 attack on the prison guard.

21  (MTD, Part 9 at 23-25.)  Plaintiff claimed that the prison had no evidence to support its disciplinary

22  actions.  (MTD, Part 9 at 25; MTD, Part 10 at 1-3.)

23         On November 3, 2006, this Court denied Plaintiff's petition.  (MTD, Part 11 at 10.)  The

24  Report and Recommendation issued by the magistrate judge recommended denying the petition

25  without prejudice, thereby allowing Plaintiff to properly file his complaint as a civil rights violation

26  under § 1983.  (MTD, Part 11 at 13.)  The district judge, however, held that Plaintiff could bring this

27  claim in a petition for writ of habeas corpus and proceeded to address the merits of Plaintiff's claim.

28  (MTD, Part 11 at 19.)  The district judge found that the prison officials had not violated Plaintiff's

1   due process rights because he was provided with notice and the opportunity to call witnesses.  This

2   Court also found no indication that Plaintiff had requested discovery of the videotape or photographs

3   and that he had failed to raise this issue in his administrative appeal.  Lastly, the Court held that the

4   prison's disciplinary actions were based on sufficient evidence.  (MTD, Part 11 at 20.)  Accordingly,

5   Plaintiff had failed to show that the state courts' adjudication of the claim was contrary to

6   established federal law or based on an unreasonable determination of the facts, and his petition for

7   writ of habeas corpus was denied with prejudice.  (Id.)

8          On February 22, 2007, Plaintiff filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §

9   1983 in the United States District Court, Southern District of California.  Plaintiff identifies four

10  defendants, acting in their official and individual capacities: (1) George Giurbino, the Warden of

11  Calipatria; (2) A. Silva, a correctional officer at Calipatria; (3) R. Johnson, a correctional sergeant at

12  Calipatria; and (4) M.P. Duran, a correctional lieutenant at Calipatria.  (Compl. at 2,8.)

13         In his complaint, Plaintiff alleges Defendants (1) violated his right to Equal Protection as

14  guaranteed by the Fourteenth Amendment, (2) violated his right to be free from cruel and unusual

15  punishment as guaranteed by the Eighth Amendment, and (3) intentionally caused him to suffer

16  emotional distress.  (Compl. at 3, 8-9.)

17         Further, the Court construes other allegations in the complaint as due process claims.

18  Although Plaintiff does not expressly claim a violation of his right to due process as a cause of

19  action, Plaintiff alleges (1) he was denied a fair disciplinary hearing related to his involvement in the

20  attack on the prison guard, and (2) he was unfairly placed in administrative segregation.  (Compl. at

21  3, 4, 5, 6, 9, 10.)  Therefore, the Court construes these allegations as amounting to two separate due

22  process claims.

23         On February 22, 2008, Defendants filed a Motion to Dismiss Plaintiff's Complaint, a

24  Memorandum of Points and Authorities in Support of the Motion to Dismiss, and a Request for

25  Judicial Notice in Support of the Motion to Dismiss.  (Doc. No. 15.)  Defendants argue that

26  Plaintiff's claims should be dismissed because: (1) the Eleventh Amendment immunizes Defendants

27  from liability in their official capacities; (2) Plaintiff's due process claim is barred under the

28  principle of res judicata; (3) Plaintiff failed to exhaust his due process claim, as required under Fed.

R. Civ. P. 12(b); (4) Plaintiff's Complaint fails to state a claim for which relief can be granted under the Eighth or Fourteenth Amendment, as required by Fed. R. Civ. P. 12(b)(6); (5) Defendants are entitled to qualified immunity from damages in their individual capacities; and (6) Plaintiff's state law claim is barred for failure to comply with the California Tort Claims Act.  (MTD, Part 1 at 1-2.)

On April 9, 2008, Plaintiff filed an opposition to Defendants' Motion to Dismiss, nunc pro tunc to April 2, 2008.  (Doc. No. 18.)  On April 9, 2008, Defendants filed a Response to Plaintiff's Opposition.  (Doc. No. 19.)

### III. DISCUSSION

**A.      Eleventh Amendment Immunity**

In his Complaint, Plaintiff asserts that Defendants are "persons for purpose of 1983 [sic]" and are not afforded immunity under the Eleventh Amendment.  (Compl. at 8.)  Defendants argue that the Eleventh Amendment entitles them to immunity from damages in their official capacities.  (MTD, Part 2 at 13-14.)

"It is well established that agencies of the state are immune from private damages or suits for injunctive relief brought in federal court."  Savage v. Glendale Union High Sch., 343 F.3d 1036. 1040 (9th Cir. 2003).  A state or an agency of the state is immune from suits filed by private citizens in federal court, provided that the state or agency did not consent to the suit.  Pennhurst State Sch. v. Halderman, 465 U.S. 89, 100 (1984).

With respect to § 1983 cases, "neither a state nor its officials acting in official capacities are 'persons'" within the meaning of the statute.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Though a named defendant might physically be a "person," a suit filed against a defendant in his official capacity is a suit filed against his office, not the defendant individually.  Id. Therefore, a plaintiff may not seek damages from a defendant acting within an official capacity under § 1983.

Here, Plaintiff seeks relief under § 1983 from Defendants in their official capacities. (Compl. at 2, 8.)  The Defendants are employed by Calipatria State Prison, an agency of the state of California.  Though Plaintiff names individual persons as defendants, Plaintiff is seeking relief from the prison.  As a state agency, a prison is not a person for purposes of § 1983.  The Eleventh Amendment grants immunity to the prison from private lawsuits filed in federal court.  Plaintiff is

1   therefore barred from seeking damages from Defendants in their official capacities.

2        Accordingly, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED

3   without leave to amend, only to the extent that Plaintiff seeks damages against Defendants in their

4   official capacities.

5   **B.     Failure to Exhaust**

6        Plaintiff argues Defendants wrongfully withheld evidence at his administrative hearing.

7   (Compl. at 3, 4, 5, 6, and 9.)  As previously discussed, the Court construes this allegation as a due

8   process claim.  Defendants assert that this claim must be dismissed because Plaintiff failed to

9   exhaust it during administrative proceedings.  (MTD, Part 2 at 20.)

10       42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"),

11  Pub. L. No. 104-134, Title VIII, §§ 801-10, 110 Stat. 1321 (1996), provides that "[n]o action shall

12  be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

13  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

14  as are available are exhausted."

15       The administrative appeal system for inmates in the California prison system is described in

16  Title 15 of the California Code of Regulations.  "Any inmate or parolee under the [California

17  Department of Correction's] jurisdiction may appeal any departmental decision, action, condition or

18  policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, §

19  3084.1(a).  In order to exhaust administrative remedies, a prisoner must first attempt to informally

20  resolve the problem with the "staff [member] involved in the action or decision being appealed."  Id.

21  § 3084.5(a).  If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal

22  form (i.e., a CDC 602 form) to the institution's Appeals Coordinator or Appeals Office, id. §

23  3084.5(b), and if unsuccessful there, must submit a formal appeal for second level review, id. §

24  3084.5(c), which is conducted by the institution head or designee.  Id. § 3084.5(e)(1).  Finally, the

25  prisoner must submit a formal appeal for third level review to the director of the California

26  Department of Corrections or the director's designee.  Id. § 3084.5(e)(2).  The Director's Level

27  Decision "shall be final and exhausts all administrative remedies available in the Department [of

28  Corrections]." See Cal. Dept. of Corrections Operations Manual, § 54100.11, "Levels of Review."

1    See Barela v. Variz, 36 F. Supp. 2d 1254, 1257 (S.D. Cal. 1999); Barry v. Ratelle, 985 F. Supp.

2    1235, 1237 (S.D. Cal. 1997).

3         Here, Plaintiff has failed to exhaust his claim that Defendants wrongfully withheld evidence.

4    Although he submitted a formal appeal at the first, second, and third levels of review, he did not

5    include his claim that Defendants wrongfully withheld evidence in his appeal.  (MTD, Part 3 at 6-

6    26; MTD, Part 4 at 1-26; MTD, Part 5 at 1-18; MTD, Part 6 at 1-8.)  Plaintiff solely appealed his

7    claim that there was insufficient evidence to establish his guilt.  (Id.)  According to 42 U.S.C. §

8    1997e(a), as amended by the Prison Litigation Reform Act of 1995, Plaintiff may not bring a claim

9    under section 1983 that Defendants wrongfully withheld evidence since Plaintiff has not properly

10   exhausted his administrative remedies pursuant to Title 15 of the California Code of Regulations.

11   Therefore, this Court RECOMMENDS that Defendants' motion to dismiss be GRANTED as relates

12   to Plaintiff's due process claim that Defendants wrongfully withheld evidence.

13   **C.    Res Judicata Bars Plaintiff's Due Process Claim As Relates to the Disciplinary Hearing**

14        Plaintiff alleges he was denied a fair disciplinary hearing regarding his involvement in the

15   attack on the prison guard.  Specifically, Plaintiff alleges (1) the disciplinary board relied on

16   insufficient evidence in finding him guilty, (2) Defendants withheld material evidence that Plaintiff

17   sought to use in his defense, and (3) Defendants did not allow him to call witnesses or present

18   evidence to support his innocence.[5]  (Compl. at 3, 4, 5, 6, 9, 10.)

19        Defendants assert that the doctrine of res judicata, or claim preclusion, bars Plaintiff from

20   litigating his due process claim in this Court.  (MTD, Part 2 at 14-20.)  Specifically, Defendants

21   argue that Plaintiff's federal petition for writ of habeas corpus, filed on October 11, 2005, and the

22   instant complaint was between the same parties or their privies, involved the same claim or cause of

23   action, and was a final judgment on the merits.  (MTD, Part 2 at 16-20.)  Therefore, Defendants

24   argue Plaintiff is barred from re-litigating these claims.  (MTD, Part 2 at 14.)

25        In evaluating the preclusive effect of a federal judgment, a court applies federal law.

26   _____

27        [5]  The Court has already found that Plaintiff failed to exhaust his due process claim that
     Defendants' wrongfully withheld evidence.  See Section B.  Therefore, the Court's analysis of Plaintiff's
28   due process claim in this section relates to Plaintiff's remaining complaints about his disciplinary
     hearing, that is the disciplinary board's reliance on insufficient evidence for a guilty verdict and denial
     of Plaintiff's right to call witnesses on his behalf.  (Compl. at 4, 5.)

1    Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 n.12 (1971).  Under federal

2    law, the doctrine of res judicata holds that "a final judgment on the merits bars further claims by

3    parties or their privies based on the same cause of action."  Brown v. Felsen, 442 U.S. 127, 132

4    (1979)(quoting Montana v. United States, 440 U.S. 147, 153 (1979).  Specifically, res judicata

5    applies where a prior suit: "(1) reached a final judgment on the merits; (2) involved the same cause

6    of action or claim; and (3) involved identical parties or privies."  Leon v. IDX Systems Corp., F.3d

7    951, 963 (9th Cir. 2006);  Sidhu v. Fletco Co., 279 F.3d 896, 900 (9th Cir. 2002).

8          The Ninth Circuit specifically recognizes that res judicata is applicable to § 1983 claims.

9    Valley Wood Preserving Inc. v. Paul, 785 F.2d 751, 753 (9th Cir. 1986).  With respect to habeas

10   judgments, "a prior federal habeas decision may have preclusive effect in a § 1983 action" if the

11   required elements are satisfied.  Hawkins v. Risley, 984 F.2d 321, 323 (9th Cir. 1993)(citing

12   Williams v. Ward, 556 F.2d 1143, 1153-1154 (2d Cir. 1977)(holding that "even a judgment in

13   habeas can effect issue preclusion in a s 1983 [sic] action if the issue was litigated and the decision

14   was on the merits)).  See also Clement v. California Dep't of Corrections, 220 F.Supp.2d 1098, 1108

15   (N.D. Cal. 2002)(holding that a state habeas proceeding has a preclusive effect on a subsequent §

16   1983 action "if the State habeas court afforded a full and fair opportunity for the issue to be heard

17   and determined under federal standards).

18         **1.      Final Judgment on the Merits**

19         For a claim to have a preclusive effect on a subsequent claim, the prior suit must have

20   "reached a final judgment on the merits."  Leon, F.3d at 963.  "In federal courts, a district court

21   judgment is 'final' for purposes of res judicata."  Sosa v. DIRECTV, Inc., 437 F.3d 923, 928 (9th

22   Cir. 2006)(internal quotations omitted).  Furthermore, a dismissal with prejudice constitutes a

23   determination on the merits.  Leon, 464 F.3d at 962;  see also, Beard v. Sheet Metal Workers Union,

24   908 F.2d 474, 477 n.3 (9th Cir. 1990)("Federal law dictates that a dismissal with prejudice bars a

25   later suit under res judicata.")

26         Here, this Court denied Plaintiff's petition for writ of habeas corpus with prejudice.  (See

27   RJN at 82.)  Thus, this denial constitutes a final judgment on the merits of Plaintiff's previous due

28   process claim and this element of a res judicata analysis is satisfied.

**2.      Same Cause of Action or Claim**

Res judicata applies only when a claim asserts the same claim or cause of action as a previous suit.  Leon, 464 F.3d at 963.  Whether two suits assert the same claim or cause of action depends on several factors: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior litigation would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."  Mpoyo v. Litton Electro-Optical Systems, 430 F.3d 985, 987 (9th Cir. 2005);  Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 921 (9th Cir. 2003).

The Ninth Circuit warns that a court should not apply these criteria mechanically to every case.  See Mpoyo, 430 F.3d at 987;  Latman v. Burdette, 366 F.3d 774, 783 (9th Cir. 2004).  The most important factor in determining the preclusive effect of a prior judgment is "whether the claims arise out of the same transactional nucleus of operative facts."  Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000);  see also, Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064 (9th Cir. 2003).  When applying these factors, the Ninth Circuit has "often held the common nucleus criterion to be outcome determinative" in establishing this res judicata element.  Mpoyo, 430 F.3d at 988.

Plaintiff filed a petition for writ of habeas corpus to this Court alleging a violation of his right to due process.  (MTD, Part 9 at 23-25.)  Plaintiff alleged that prison officials forged his signature on a form waiving his right to call witnesses at his disciplinary hearing and rendered a guilty verdict based on insufficient evidence.  (Id.)  In his instant § 1983 action, Plaintiff similarly claims that his right to due process was violated when Defendants wrongfully withheld evidence, denied him of his right to call witnesses, and relied on insufficient evidence.  (Compl. at 4, 5.)

Plaintiff's claim in his federal habeas petition and in his current complaint are the same cause of action or claim.  First, Plaintiff's current complaint essentially seeks to disrupt the finding in his habeas petition that established that the disciplinary hearing had not violated Plaintiff's right to due process.  (MTD, Part 11 at 19-20.)  Second, both actions allege a violation of Plaintiff's due process rights, and therefore, constitute an infringement of the same right.  Finally, Plaintiff's claims in his

petition and instant § 1983 complaint arise from the same transactional nucleus of facts. Specifically, Plaintiff's claim in his petition for writ of habeas corpus and his current due process claim both arise from prison officials' conduct during Plaintiff's disciplinary hearing.  Thus, this element of a res judicata analysis is satisfied.

### 3.    Same Parties or their Privies

Lastly, the prior litigation must have involved the same parties or their privies.  Leon, 464 F.3d at 963.  "Whether a person was a party to the prior suit must be determined as a matter of substance and not of mere form."  American Triticale, Inc. v. Nytco Services, Inc., 962 F.2d 1391, 1147 (9th Cir. 1981).  The most important consideration is "whether or not in the earlier litigation the representative of the [party] had authority to represent its interests in a final adjudication of the issue in controversy."  Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 403 (1940);  see also, Fund for Animals v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992).  With respect to litigation involving government officers, privity exists "between officers of the same government" for purposes of res judicata.  Id. (quoting Sunshine, 310 U.S. at 402-03).

However, res judicata does not apply where the parties in the two suits are sued in different capacities.  "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."  Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000) (quoting Restatement (Second) of Judgments § 36(2) (1982).  The Andrews court further explained the differences in the context of suits against government officials:

> Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets.  Furthermore, different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official-capacity action.  These differences indicate that a government official in his official capacity does not represent "precisely the same legal right" as he does in his individual capacity.

Id. at 25 (citations omitted).

Plaintiff's prior petition for writ of habeas corpus named George Giurbino, Warden of Calipatria, as respondent.  (MTD, Part 9 at 18.)  In Plaintiff's instant action, the Defendants are R. Johnson and M.P. Duran, sued in both their official and individual capacities.  (Compl. at 1.)

- 10 -

1    To the extent that Plaintiff seeks relief from Defendants in their official capacities, Plaintiff
2    is seeking relief from the state agency where Defendants are employed, Calipatria State Prison.  In
3    his previous habeas claim, Plaintiff was also seeking relief from Calipatria State Prison.
4    Additionally, as officials of the same state governmental agency, privity exists between Giurbino
5    and the current Defendants in their official capacities.  Accordingly, Plaintiff's habeas petition and
6    his due process claim against Defendants in their official capacities in this complaint involve the
7    same parties or privies.

8    To the extent that Plaintiff seeks relief from Defendants in their individual capacities,
9    however, this element of res judicata is not satisfied.  In Plaintiff's previous habeas petition,
10   Guirbino did not represent the interests of Defendants Johnson and Duran in their individual
11   capacities and thus privity does not exist.  Plaintiff's habeas petition and his due process claim
12   against Defendants in their individual capacities in this complaint does not involve the same parties
13   or privies.  Thus, the doctrine of res judicata does not extend to Plaintiff's claims against Defendants
14   in their individual capacities.

15   Accordingly, this Court RECOMMENDS that Defendants' Motion to Dismiss be
16   GRANTED as relates to Plaintiff's due process claim regarding the disciplinary hearing against
17   Defendants in their official capacities, without leave to amend, and DENIED as relates to Plaintiff's
18   due process claim regarding the disciplinary hearing against Defendants in their individual
19   capacities.

20   **D.      Fed. R. Civ. P. 12(b)(6)**

21   Plaintiff claims that Defendants violated his right to due process by placing him in
22   administrative segregation for 82 days (Compl. at 3.)  Plaintiff also alleges that Defendants violated
23   his right to freedom from cruel and unusual punishment as guaranteed by the Eighth Amendment
24   and his right to equal protection as guaranteed by the Fourteenth Amendment.  (Compl. at 3.)

25   Defendants argue that Plaintiff's due process claim, Eighth Amendment claim, and equal
26   protection claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for
27   failure to state a claim for which relief can be granted.  (MTD, Part 2 at 23.)

28   ///

07cv0353-W (POR)

1        **1.      Standard of Review per Fed. R. Civ. P. 12(b)(6)**

2        A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6) tests the

3   legal sufficiency of the claims in the complaint.  A claim cannot be dismissed unless it "appears

4   beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

5   him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957);  see Daniel v. County of Santa

6   Barbara, 288 F.3d 375, 380 (9th Cir. 2002);  Knevelbaard Dairies v. Kraft Foods, Inc, 232 F.3d 979,

7   984 (9th Cir. 2000).  In order to survive a motion to dismiss, a plaintiff must "allege overt acts with

8   some degree of particularity such that his claim is set forth clearly enough to give defendants fair

9   notice of the type of claim being pursued." Ortez v. Washington County, 88 F.3d 804, 810 (9th Cir.

10  1996).

11       The court must accept as true all material allegations in the complaint, as well as reasoned

12  inferences to be drawn from them, and must construe the complaint in the light most favorable to the

13  plaintiff. N.L. Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986);  Parks School of

14  Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  The court looks not at whether the

15  plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the

16  claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974);  Display Research Laboratories, Inc. v.

17  Telegen Corp., 133 F. Supp. 2d 1170, 1173 (N.D. Cal. 2001).

18       Where a plaintiff appears in *propria persona* in a civil rights case, the court must construe

19  the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los

20  Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is

21  "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir.

22  1992).  In giving liberal interpretation to a *pro se* civil rights complaint, however, the court may not

23  "supply essential elements of claims that were not initially pled." Ivey v. Board of Regents of the

24  University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  Vague or conclusory allegations are not

25  sufficient to withstand a motion to dismiss in civil rights violations.  Id.;  see also Jones v.

26  Community Redevelopment Agency, 733 F.2d 646, 649 (9 th Cir. 1984) (conclusory allegations

27  unsupported by facts are insufficient to state a claim under section 1983).  "The plaintiff must allege

28  with at least some degree of particularity overt acts which defendants engaged in that support the

plaintiff's claim." Jones, 733 F.2d at 649 (internal quotation omitted).

1        In addition, when resolving a motion to dismiss for failure to state a claim, the court may not

2    generally consider materials outside the pleadings.  Schneider v. California Dep't of Corrections,

3    151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  "The focus of any Rule 12(b)(6) dismissal . . . is the

4    complaint."  Id. at 1197 n.1.  However, the court may consider documents or exhibits "whose

5    contents are alleged in a complaint and whose authenticity no party questions."  Branch v. Tunnell,

6    14 F.3d 449, 454 (9th Cir. 1994);  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555

7    (9th Cir. 1990);  Stone v. Writer's Guild of Am. W. Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

8        Where a *pro se* litigant's claim is dismissed for failure to state a claim, leave to amend

9    should be granted unless "it is absolutely clear that the deficiencies of the complaint could not be

10   cured by amendment."  Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007)(quoting Schucker

11   v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).  Prior to a final dismissal of a claim, "a *pro

12   se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend."  Lucas

13   v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

14       **2.        Plaintiff's Due Process Claim As To Placement in Administrative Segregation**

15       The United States Supreme Court has established a two-step process for analyzing an

16   inmate's due process claim.  Hayward v. Marshall, 512 F.3d 536, 541 (9th Cir. 2008)(citing Ky.

17   Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989));  see also Biggs v. Terhune, 334 F.3d

18   910, 913 (9th Cir. 2003).  First, the Court must determine whether the state interfered with an

19   inmate's protected liberty or property interest.  Id.  If a protected liberty interest is found, only then

20   must the Court determine whether the state afforded the inmate sufficient procedure to satisfy the

21   inmate's constitutional rights.  Id.;  see also Board of Regents v. Roth, 408 U.S. 564 (1972)(holding

22   that "requirements of due process apply only to the deprivation of interests encompassed by the

23   Fourteenth Amendment's protection of liberty and property").  If the Court does not find a protected

24   liberty interest at stake, the "Plaintiff has failed to state a Section 1983 claim for a Fourteenth

25   Amendment violation."  Deadmon v. Grannis, 2008 WL 595883 at *5 (S.D. Cal. 2008)(slip copy).

26       In determining whether a state has interfered with an inmate's protected liberty interest, other

27   than the interests of life, liberty, or property as enumerated in the Due Process Clause, the inquiry

28   centers on the nature of the interference.  Sandin v. Conner, 515 U.S. 472, 485 (1995).  An inmate

1   has a recognized liberty interest in freedom from state action that arises in an "unexpected manner,"

2   imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of

3   prison life," or increases the inmate's sentence.  Id. at 484;  see also Serrano v. Francis, 345 F.3d

4   1071, 1078 (9th Cir. 2003).

5          A term in administrative segregation generally does not interfere with an inmate's protected

6   liberty interest.  Serrano, 345 F.3d at 1078.  The United States Supreme Court in Sandin held that

7   "discipline in segregated confinement did not present the type of atypical, significant deprivation in

8   which a state might conceivably create a liberty interest" when the conditions of segregation were

9   similar to those of the rest of the prison and when the term of the segregation did not affect the

10   duration of the inmate's sentence.  Sandin, 515 U.S. at 485-87.  However, such a term *may*

11   constitute a protected liberty interest if the segregation is atypical and significant as compared to the

12   conditions of regular prison life or if the term affects the duration of the inmate's sentence.  Id.

13          Here, Plaintiff does not make any allegations that the conditions of his segregation were any

14   different than the conditions of regular prison life.  Plaintiff provides no description of his term in

15   segregation.  Plaintiff also does not allege that the duration of his sentence was increased as a result

16   of his 82-day term in segregation.  Plaintiff's complaint is simply that he was *placed* in

17   administrative segregation.

18          As Plaintiff's term in administrative segregation did not present an atypical or significant

19   hardship, nor increase the duration of Plaintiff's sentence, his avoidance of such a term did not

20   constitute a protected liberty interest.  As such, Plaintiff has failed to state a § 1983 claim

21          for a due process violation.  See Deadmon v. Grannis, 2008 WL 595883 at *5.

22          Accordingly, the Court RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's due

23   process claim relating to his term in administrative segregation be GRANTED with leave to amend.

24          **3.     Plaintiff's Eighth Amendment Claim**

25          Plaintiff alleges that Defendants violated his right to be free from cruel and unusual

26   punishment.  (Compl. at 3.)  Defendants argue that Plaintiff has simply alleged "broad conclusory

27   allegations of damages," and has therefore failed to state a cognizable claim for relief under the

28   Eighth Amendment.  (MTD, Part 2 at 23.)

1   "The treatment a prisoner receives in prison and the conditions under which the he is

2   confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825,

3   832 (1994)(internal quotation omitted);  see also Morgan v. Morgansen, 465 F.3d 1041 (9th Cir.

4   2006)("The Eighth Amendment's prohibition against cruel and unusual punishment protects

5   prisoners not only from inhumane methods of punishment but also from inhumane conditions of

6   confinement.").  However, due to the "harsh and restrictive" nature of a prison setting, a prisoner's

7   injury does not automatically constitute a constitutional violation.  Morgan, 465 F.3d at 1045.

8   A prisoner alleging a violation of his Eighth Amendment must satisfy both an objective and a

9   subjective component.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  First, an inmate must

10  show that "the deprivation he suffered was objectively, sufficiently serious."  Morgan, 465 F.3d at

11  1045.  The deprivation must be such that the prisoner is denied "the minimal civilized measure of

12  life's necessities."  Farmer, 511 U.S. at 834 (internal quotation omitted).

13  Second, the prisoner must show "that prison officials were deliberately indifferent to his

14  safety in allowing the deprivation to take place."  Id.;  see also Farmer, 511 U.S. at 834.  Deliberate

15  indifference is present when a prison official "knows of and disregards an excessive risk to inmate

16  health or safety."  Farmer, 511 U.S. at 837.

17  In the instant action, Plaintiff separates his causes of action under four headings, none of

18  which are devoted to his Eighth Amendment claim.  Additionally, Plaintiff does not clearly connect

19  his factual allegations to his Eighth Amendment claim.  It appears from reading his complaint,

20  Plaintiff is alleging that Defendants' actions of tampering with and destroying evidence related to

21  his disciplinary hearing constitute an Eighth Amendment violation.

22  Such an allegation does not amount to an Eighth Amendment claim as it does not constitute a

23  deprivation of a "minimal civilized measure of life's necessities."  See Farmer, 511 U.S. at 837.

24  These allegations appear to be more relevant to a violation of Plaintiff's right to due process, rather

25  than a violation of Plaintiff's Eighth Amendment rights.  The Court has already addressed Plaintiff's

26  due process claims in Sections B and C of this Report.  Accordingly, the Court RECOMMENDS

27  that Defendants' Motion to Dismiss be GRANTED as to Plaintiff's Eighth Amendment claim

28  without leave to amend.

**4.      Plaintiff's Equal Protection Claim**

Plaintiff makes numerous allegations that Defendants acted in a discriminatory manner when they falsely accused him of participating in the November 21, 2003 attack on the prison guard, interfered with evidence related to this incident, placed him in administrative segregation, and transferred him to another prison.  (Compl. at 3, 4, 5, 6, 7, 8.)  Plaintiff specifically contends that Defendants' conduct was motivated by Plaintiff's "color of skin," nationality, native language, Latino name, level of education, and similar appearance to a "Mexican-Hispanic."  (Id.)

Defendants argue that Plaintiff has failed to meet the standards required for an Equal Protection claim because Plaintiff alleged no facts establishing Defendants' discriminatory intent. (MTD, Part 2 at 25.)

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001);  see also, Reese v. Jefferson School Dist., 208 F.3d 739, 740 (9th Cir. 2000);  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  A "purpose to discriminate" requires that the defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." Lee, 250 F.3d at 687 (quoting Navarro v. Black, 72 F.3d 712 n.5 (9th Cir. 1995)).

An equal protection claim may be brought by a "class of one," in which a plaintiff claims to have been intentionally treated differently than others similarly situated without a rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000);  Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1179 (E.D. Cal. 2005).

Here, Plaintiff has stated sufficient facts for an equal protection claim.  Plaintiff claims that Defendants falsely accused him of participating in the attack on the prison guard because of Plaintiff's race.  (Compl. at 4.)  Plaintiff alleges that Defendants relied on false evidence and placed Plaintiff in segregation "as a punishment and retaliation" for being Latino.  (Compl. at 5.)  Plaintiff also claims that Defendants lied and concealed evidence during his disciplinary hearing.  (Compl. at 5, 6.)  Accepting these allegations as true, Plaintiff states sufficient facts to state a claim that

1    Defendants acted with the intent to discriminate against Plaintiff based on his Latino race.

2         Therefore, this Court RECOMMENDS that Defendant's Motion to Dismiss be DENIED as

3    to Plaintiff's equal protection claim.

4    **E.      Plaintiff's State Law Claim**

5         Plaintiff asserts a state tort cause of action against Defendants for intentional infliction of

6    emotional distress.  (Compl. at 8.)  Plaintiff argues that Defendants caused him emotional distress

7    when they falsely accused him of participating in the November 21, 2003 attack on the prison guard,

8    interfered with evidence related to this incident, placed him in administrative segregation, and

9    transferred him to another prison.  (Compl. at 8-9.)

10        Defendants argue that Plaintiff's state tort claim should be dismissed pursuant to the

11   California Tort Claims Act (CTCA), which requires an inmate to present claims to the Victim

12   Compensation Board before filing a claim in state or federal court.  (MTD, Part 3 at 2.)  Defendants

13   claim that Plaintiff did not raise the claims presented here to the Board, and therefore his claims

14   should be dismissed for failure to exhaust state remedies.  (Id.)

15        California Government Code § 945.4 provides that "no suit for money or damages may be

16   brought against a public entity on a cause of action for which a claim is required to be presented ...

17   until a written claim therefor has been presented to the public entity and has been acted upon by the

18   board, or has been deemed to have been rejected by the board."  West's Ann.Cal.Gov.Code § 945.4

19   (West 2008).  In addition, section 945.6 provides that, "any suit brought against a public entity on a

20   cause of action for which a claim is required to be presented ... must be commenced, if written notice

21   is given in accordance with section 913, not later than six months after the date such notice is

22   personally delivered or deposited in the mail."  West's Ann.Cal. Gov. Code § 945.6. (West 2008).

23        The Ninth Circuit has expressly held that a tort claim against a public entity must be

24   presented to the Board before a plaintiff may pursue the claim in federal court.  Mangold v.

25   California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995). A plaintiff pursuing such a

26   claim has the burden of affirmatively alleging compliance with the CTCA.  Karim-Panahi v. Los

27   Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988);  Hendon v. Ramsey, 528 F.Supp.2d 1058,

28   1069 (S.D. Cal. 2007).  An inmate's utilization of the prison's grievance system does not satisfy the

1    CTCA's requirements.  Hendon, 528 F.Supp.2d at 1069.

2            Here, there is no indication that Plaintiff has complied with California's Tort Claims Act.

3    First, Plaintiff fails to allege facts which show he has complied with California's Tort Claims Act.

4    Karim-Panahi, 839 F.2d at 627.  Second, Defendants represent they have searched the Victim

5    Compensation Board's records and discovered Plaintiff presented only one claim to the Board, and

6    that claim is not related to any of the claims he raises in this action.[6]  (Defs.' Exhibit F.)  Based on

7    these reasons, the Court RECOMMENDS Defendants' motion to dismiss as relates to Plaintiff's

8    state tort law claims be GRANTED with leave to amend.

9    **F.        Qualified Immunity**

10           Defendants argue they are entitled to qualified immunity because Plaintiff fails to adequately

11   allege a constitutional violation.  (MTD, Part 3 at 1.)

12           "Where the defendant seeks qualified immunity, a ruling on that issue should be made early

13   in the proceedings so that the costs and expenses of trial are avoided where the defense is

14   dispositive."  Saucier v. Katz, 533 U.S. 194, 199-200 (2001).  Because facts necessary to establish

15   an affirmative defense generally must be shown by matter outside the complaint, however, a

16   qualified immunity defense is generally not amenable to a Rule 12(b)(6) motion.  See Morley v.

17   Walker, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of the fact that all allegations in the

18   complaint must be regarded as true on a motion to dismiss, "dismissal [on qualified immunity

19   grounds] for failure to state a claim under 12(b)(6) is inappropriate").  The court is usually "not

20   equipped at this stage to determine whether qualified immunity will ultimately protect [the

21   defendant].  Those issues must be resolved at summary judgment or at trial."  Id.; see also Groten v.

22   California, 251 F.3d 844, 851 (9th Cir. 2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the

23   court] can determine, based on the complaint itself, that qualified immunity applies.") (citing Jensen

24   v. City of Oxford, 145 F.3d 1078, 1085 (9th Cir. 1998)).

25           This Court has recommended that Defendants Motion to Dismiss be denied as to Plaintiff's

26   equal protection claim.  Should the district judge assigned to this matter adopt this Court's

27   recommendation, and subsequently, this matter proceeds to summary judgment or trial, then a

28

---

[6] Pursuant to California Government Code § 915(b), claims against the State must be presented to the State Victim Compensation and Government Claims Board.  See Cal. Gov.Code § 915

determination as to whether Defendants are entitled to qualified immunity would be proper at that juncture.  It is inappropriate for this Court to rule on Defendants' request for qualified immunity at this stage in the litigation.  Accordingly, the Court RECOMMENDS that Defendants' request for qualified immunity be DENIED WITHOUT PREJUDICE.

## IV. CONCLUSION

For the reasons set forth herein, it is recommended that Defendants' motion to dismiss be GRANTED in part and DENIED in part. The Court recommends that:

(1)     Defendants' Motion to Dismiss be **GRANTED** to the extent Plaintiff is seeking damages against Defendants in their official capacities;

(2)     Defendants' Motion to Dismiss Plaintiff's due process claim that Defendants wrongfully withheld evidence be **GRANTED**;

(3)     Defendants' Motion to Dismiss Plaintiff's due process claim regarding his disciplinary hearing against Defendants in their *official* capacities be **GRANTED**;

(4)     Defendants' Motion to Dismiss Plaintiff's due process claim regarding his disciplinary hearing against Defendants in their *individual* capacities be **DENIED**;

(5)     Defendants' Motion to Dismiss Plaintiff's due process claim regarding his placement in administrative segregation be **GRANTED** with leave to amend;

(6)     Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim be **GRANTED** without leave to amend;

(7)     Defendants' Motion to Dismiss Plaintiff's Equal Protection claim be **DENIED**;

(8)     Defendants' Motion to Dismiss Plaintiff's state tort cause of action be **GRANTED** with leave to amend; and

(9)     Defendants' request for qualified immunity be **DENIED** without prejudice.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1994).

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

1    objections with the Court and serve a copy on all parties on or before **September 12, 2008**.  This

2    document should be captioned "Objections to Report and Recommendation."  Any reply to the

3    objections shall be served and filed **no later than 10 days** after being served with the objections.

4    *The parties are advised that no extensions of time will be granted for purposes of filing objections.*

5    The parties are further advised that failure to file objections within the specified time may waive the

6    right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7            **IT IS SO ORDERED.**

8

9    DATED:  August 8, 2008

10

11   _____
     LOUISA S PORTER

12   United States Magistrate Judge

13   cc:        The Honorable Thomas J. Whelan

14              all parties

15

16

17

18

19

20

21

22

23

24

25

26

27

28